Exhibit A

| STATE OF MICHIGAN<br>THIRD JUDICIAL CIRCUIT<br>WAYNE COUNTY | SUMMONS AND<br>RETURN OF SERVICE | CASE NO.<br>12-013366-CK |
|---|---|---|

2 Woodward Ave., Detroit MI 48226

Court Telephone No. 313-224-5207

THIS CASE IS ASSIGNED TO JUDGE    Jeanne Stempien    Bar Number: 31381

| **Plaintiff**<br>GEE PARTNERSHIP HOLDINGS, LLC | v | **Defendant**<br>GLOBAL FINANCIAL ENTERPRISES, LLC<br>3125 West Commercial Blvd.<br>Suite 100<br>Fort Lauderdale, FL 33309 |
|---|---|---|
| **Plaintiff's Attorney**<br>Miles T. Macik, P-63262<br>450 W 4th St<br>Royal Oak, MI 48067-2557 | | |

| CASE FILING FEE | JURY FEE |
|---|---|
| [X]    Case Filing Fee - $150.00 | [ ]    Jury Fee - $85.00 |

| **ISSUED**<br>10/10/2012 | **THIS SUMMONS EXPIRES**<br>1/ 9/2013 | **DEPUTY COUNTY CLERK**<br>Deborah Bynum |
|---|---|---|

*This summons is invalid unless served on or before its expiration date.    CATHY M. GARRETT - WAYNE COUNTY CLERK

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:

1.   You are being sued.

2.   YOU HAVE 21 DAYS after receiving this summons to file an answer with the court and serve a copy on the other party or take other lawful action (28 days if you were served by mail or you were served outside this state).

3.   If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

X    There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

__   A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.

__   There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.

__   An action within the jurisdiction of the family division of circuit court involving the family or family members of the parties has been previously filed in _____ Court.

The docket number and assigned judge of the civil/domestic relations action are:

| Docket No. | Judge | Bar No. |
|---|---|---|
| | | |

The action [ ] remains    [ ] is no longer    pending.

I declare that the complaint information above and attached is true to the best of my information, knowledge, and belief.

_____          _____
Date                                                           Signature of attorney/plaintiff

**COMPLAINT IS STATED ON ATTACHED PAGES. EXHIBITS ARE ATTACHED IF REQUIRED BY COURT RULE.**
If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you to fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01-3CC (09/2008) SUMMONS AND RETURN OF SERVICE
MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a),(b), MCR 3.206(A)

| STATE OF MICHIGAN THIRD JUDICIAL CIRCUIT WAYNE COUNTY | SUMMONS AND RETURN OF SERVICE | CASE NO. 12-013366-CK |
|---|---|---|

2 Woodward Ave., Detroit MI 48226

Court Telephone No. 313-224-5207

THIS CASE IS ASSIGNED TO JUDGE    Jeanne Stempien    Bar Number: 31381

| **Plaintiff** GEE PARTNERSHIP HOLDINGS, LLC | v | **Defendant** TANBAR LTD., d/b/a SEKO WORLDWIDE 6800 Cypress Romulus, MI 48174 |
|---|---|---|
| **Plaintiff's Attorney** Miles T. Macik, P-63262 450 W 4th St Royal Oak, MI 48067-2557 | | |

| CASE FILING FEE | JURY FEE |
|---|---|
| [X]   Case Filing Fee - $150.00 | [ ]   Jury Fee - $85.00 |

| ISSUED 10/10/2012 | THIS SUMMONS EXPIRES 1/ 9/2013 | DEPUTY COUNTY CLERK Deborah Bynum |
|---|---|---|

*This summons is invalid unless served on or before its expiration date.    CATHY M. GARRETT - WAYNE COUNTY CLERK

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:

1.   You are being sued.

2.   YOU HAVE 21 DAYS after receiving this summons to file an answer with the court and serve a copy on the other party or take other lawful action (28 days if you were served by mail or you were served outside this state).

3.   If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

X   There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

__   A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.

__   There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.

__   An action within the jurisdiction of the family division of circuit court involving the family or family members of the parties has been previously filed in _____ Court.

The docket number and assigned judge of the civil/domestic relations action are:

| Docket No. | Judge | Bar No. |
|---|---|---|
| | | |

The action [ ] remains [ ] is no longer   pending.

I declare that the complaint information above and attached is true to the best of my information, knowledge, and belief.

_____     _____
Date                                Signature of attorney/plaintiff

**COMPLAINT IS STATED ON ATTACHED PAGES. EXHIBITS ARE ATTACHED IF REQUIRED BY COURT RULE.**

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you to fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01-3CC (09/2008) SUMMONS AND RETURN OF SERVICE
MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a),(b), MCR 3.206(A)

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

GEE PARTNERSHIP HOLDINGS, LLC,
a Delaware limited liability company, f/k/a
GEE HOLDINGS, LLC,

        Plaintiff,

                                        Case No. 12-     -CK
v.                                       Hon.

GLOBAL FINANCIAL ENTERPRISES, LLC,
a Florida limited liability company, and
TANBAR LTD., d/b/a SEKO WORLDWIDE,
a Michigan corporation,

        Defendants.

_____/

**HOWARD & HOWARD ATTORNEYS PLLC**
By:    Patrick M. McCarthy (P49100)
        Mark W. Peyser (P35473)
        Miles T. Macik (P63262)
Attorneys for Plaintiff
101 N. Main Street, Ste. 610
Ann Arbor, MI 48104-1475
Telephone: (734) 222-1483
Fax: (734) 761-5957

_____/

## COMPLAINT

        There is no other civil action arising out of the same transaction
or occurrence as alleged in this Complaint pending in this court
nor has any such action previously been filed and dismissed
after having been assigned to a judge.

        Plaintiff, Gee Partnership Holdings, LLC f/k/a Gee Holdings, LLC ("Gee"), by and

through its undersigned attorneys, for its Complaint against Defendants, Global Financial

Enterprises, LLC ("GFE") and Tanbar Ltd. d/b/a SEKO Worldwide ("SEKO"), states as follows:

Plaintiff, Gee Partnership Holdings, LLC f/k/a Gee Holdings, LLC ("Gee"), by and through its undersigned attorneys, for its Complaint against Defendants, Global Financial Enterprises, LLC ("GFE") and Tanbar Ltd. d/b/a SEKO Worldwide ("SEKO"), states as follows:

## PRELIMINARY STATEMENT

1.     This dispute arises out of a contract between Plaintiff Gee Partnership Holdings, LLC f/k/a Gee Holdings, LLC ("Gee") and Defendant Global Financial Enterprises, LLC ("GFE").   This case boils down to the undisputed fact that more than $2,000,000.00 in customized cellular telephones, purchased by Gee, are presently sitting in a storage facility in Romulus, Michigan under the control the GFE.  As described in further detail below, GFE, who agreed to purchase the cellular phones at issue from Gee under the terms of a contract (**Exhibit 1**, the "Agreement"), has refused to make payment to Gee and breached the Agreement.   These unique and customized cellular phones are on the verge of being shipped out of the County (to Europe) at the direction of GFE as part of a separate transaction between GFE and Yalçinlar Ltd., a non-party Turkish entity.  If GFE is able ship, transfer or otherwise dispose of the cellular phones at issue, not only will GFE be unjustly enriched at the expense of Gee, but more importantly, Gee will lose its unquestionable legal right to immediate possession of the customized cellular telephones it purchased, and be left without an adequate remedy at law.

## PARTIES, JURISDICTION, AND VENUE

2.     The allegations contained in all prior paragraphs are repeated as though fully set forth herein.

3.     Plaintiff Gee is a Delaware limited liability company with its principal place of business in Texas.  Gee conducts business in Oakland and Wayne Counties, Michigan.

4.     Gee delivers innovative services and solutions to the technology, consumer electronics, and mobility industries.  As part of its business operations, Gee provides consulting services to, and acquires and manages emerging technology companies.

5.     Defendant GFE is a Florida limited liability company with its principal place of business located in Fort Lauderdale, Florida.  GFE conducts business in Wayne County, Michigan.

6.     Defendant SEKO is a Michigan corporation with its principal place of business in Romulus, Wayne County, Michigan.  SEKO has been named as a necessary party based solely on the fact that it currently has possession of the goods that are the subject this lawsuit pursuant to a contractual arrangement between SEKO and GFE

7.     The goods that are the subject of this lawsuit are located in Wayne County, Michigan at a storage facility owned and/or operated by SEKO.

8.     The amount in controversy, exclusive of interest, costs, and attorney fees, is in excess of $25,000.00 and jurisdiction and venue are otherwise proper with the Court.

## FACTUAL ALLEGATIONS

9.     The allegations contained in all prior paragraphs are repeated as though fully set forth herein.

10.     In 2011, GFE found itself in need of Gee's assistance and expertise in connection with a business transaction with Yalçinlar Ltd., a non-party Turkish corporation (hereafter the "Turkish Transaction").  The Turkish Transaction obligated GFE to provide over 80,000 customized cellular telephones to Yalçinlar.

11.     In June 2011, GFE entered into a Sales Contract with Yalçinlar under which GFE initially agreed to provide Yalçinlar sixty-six thousand cellular telephones.  Subsequently, on or

3

about November 17, 2011, Yalçinlar requested an additional twenty thousand cellular telephones from GFE under the Sales Contract, bringing the total due from GFE to Yalçinlar to eighty-six thousand (86,000).

12.   On July 28, 2011, GFE entered into an Agreement with Gee, under which Gee agreed to assist GFE in meeting its contractual commitment to Yalçinlar (hereafter the "Agreement") (**Exhibit 1**).

13.   In connection with the Agreement, and in order to assist GFE in acquiring the massive number of cellular phones it needed to complete the Turkish Transaction, Gee entered into a separate purchase agreement with non-party Vertex (the "Vertex Purchase Agreement.")

14.   Under the Agreement, GFE expressly assumed Gee's performance and obligations under the Vertex Purchase Agreement. As part of the Agreement, however, Gee agreed to make payment directly to Vertex for the cellular phones.  GFE agreed to pay or "reimburse" Gee $312.56 for each cellular phone that was shipped by Vertex to GFE. (**Exhibit 1**)

15.   The Agreement also required GFE to make payment to Gee within 30 days of shipment of the cellular phones by Vertex. (**Exhibit 1**)

16.   In connection with the Agreement, and in order to assist GFE in acquiring the massive number of cellular phones it needed to complete the Turkish Transaction, Gee also negotiated several agreements with Vertex under which Vertex modified the cellular phones it provided to GFE for the Turkish Transaction.

17.   Vertex modified the cellular telephones specifically for the Turkish Transaction by flashing them with custom software, screen printing the exterior of the cellular telephones,

bringing together a specific set of accessories, and packaging the cellular telephones in a custom box.

18.     The modifications made by Vertex for the Turkish Transaction are custom, making the cellular telephones unique and extremely difficult and costly to reproduce. The custom modifications also render them worthless unless they can be sold to Yalçinlar as part of the Turkish Transaction.

19.     Based on Gee's efforts and negotiations with Vertex, Vertex provided and shipped a total of 21,051 cellular telephones to GFE specifically modified for the Turkish Transaction. This quantity of cellular phones consisted of 20,640 cellular phones kitted with accessories and 411 service stock cellular phones.

20.     Between November 18, 2011 and March 30, 2012. Vertex shipped 16,051 cellular telephones to GFE. This quantity of cellular phones consisted of 15,640 cellular phones kitted with accessories and 411 service stock cellular phones.

21.     In accordance with the Agreement, Gee has paid Vertex for 14,851 of the 16,051 it shipped between November 18, 2011 and March 30, 2012.

22.     GFE, who was contractually obligated to pay Gee upon shipment and delivery by Vertex, has failed to pay Gee in full for the cellular phones it received as required by the agreement.

23.     To date, GFE has only paid Gee for 8,300 of the 16,051 cellular telephones shipped by Vertex between November 18, 2011 and March 30, 2012 and has refused to pay Gee for the remaining 7,751 cellular telephones.

24.     The balance presently due and owing from GFE to Gee under the Agreement is $2,416,263.40, plus interest and late fees.

25.     As noted above, Defendant SEKO, on behalf of GFE, holds the cellular telephones shipped by Vertex in storage in its Romulus, Michigan storage facility pursuant to a contractual arrangement between SEKO and GFE.  At this time, however, Gee is uncertain as to how many of the 16,051 cellular telephones remain at the SEKO facility.

26.     Gee has demanded payment from GFE of the $2,416,263.40, plus interest and late fees, presently due and owing under the Agreement.  In the alternative, Gee has demanded that GFE return the cellular telephones that were shipped by Vertex and remain unpaid for under the terms of the Agreement.

27.     GFE has ceased all communications with Gee, leaving Gee with no access or control over the cellular phones in the SEKO facility.

## COUNT I
## ACTION FOR RECLAMATION PURSUANT TO M.C.L.. § 440.2507

28.     The allegations contained in all prior paragraphs are repeated as though fully set forth herein.

29.     Under the Agreement, GFE was and is required to pay Gee for the cellular telephones shipped by Vertex upon delivery.

30.     Vertex shipped 16,051 cellular telephones between November 11, 2011 and March 30, 2012.

31.     In accordance with the Agreement, GFE was required to submit payment to Gee for the 16,051 cellular telephones that Vertex shipped between November 18, 2011 and March 30, 2012.

32.     As set forth above, GFE has failed to pay Gee in full for the cellular phones shipped by Vertex as required by the Agreement.  GFE only paid Gee for 8,300 of the 16,051

cellular telephones shipped by Vertex between November 18, 2011 and March 30, 2012 and has refused to pay Gee for the remaining 7,751 cellular telephones.

33.     Gee has a right to reclaim the cellular telephones for which Gee has yet to receive payment pursuant to M.C.L § 440.2507(2).

**COUNT II**
**BREACH OF CONTRACT**

34.     The allegations contained in all prior paragraphs are repeated as though fully set forth herein.

35.     Gee and GFE entered into the Agreement whereby GFE was and is required to pay Gee for the cellular telephones shipped by Vertex.

36.     Vertex shipped 16,051 cellular telephones to GFE between November 18, 2011 and March 30, 2012.

37.     Gee fully performed its obligations under the Agreement.

38.     As set forth above, GFE has failed to pay Gee in full for the cellular phones shipped by Vertex as required by the Agreement.

39.     GFE's failure and refusal to pay Gee constitutes a breach of the Agreement.

40.     As a direct and proximate result of GFE's breach of the Agreement, Gee has suffered damages.

41.     Under the Agreement, Gee is entitled to $2,416,263.40, not including interest and late fees, for the cellular telephones that were shipped by Vertex to GFE.

COUNT III
### CLAIM AND DELIVERY PURSUANT TO MCR 3.105

42.     The allegations contained in all prior paragraphs are repeated as though fully set forth herein

43.     Gee and GFE entered into the Agreement whereby GFE was and is required to pay Gee for the cellular telephones shipped by Vertex.

44.     Vertex shipped 16,051 cellular telephones between November 18, 2011 and March 30, 2012.   The cellular telephones were shipped by Vertex to SEKO's Romulus, Michigan warehouse.

45.     In accordance with the Agreement, Gee paid Vertex for 14,851 of the cellular telephones shipped between November 18, 2011 and March 30, 2012.

46.     As set forth above, GFE has failed to pay Gee for the cellular telephones purchased by Gee and shipped to GFE in accordance with the Agreement and through its agent, SEKO, is unlawfully detaining the cellular phones shipped by Vertex and paid for by Gee.

47.     The cellular telephones, described above, to which Gee is entitled to possession, are portions of divisible property of uniform kind, quality and value.

48.     The present value of the property claimed by Gee is $2,416,263.40, which represents the amount Gee is entitled under the Agreement, not including interest and late fees, for the cellular telephones that were shipped by Vertex and for which Gee has not received payment.

49.     Gee is entitled to the cellular telephones for which it has not received payment because they were sold and delivered to GFE under a contract for the sale of goods and because Gee has paid Vertex for the cellular phones.  GFE has failed to pay for the cellular telephones in

breach of the Agreement between the Gee and GFE and GFE's actions, as set forth above, constitute an unlawful detention of the cellular telephones.

50.    Pursuant to MCR 3.105, Gee is entitled to the return of the cellular telephones for which it has not received payment and for the damages it has incurred as a result of GFE's unlawful detention of the cellular phones.

51.    Pursuant to MCR 3.105, Gee is also entitled to possession of the cellular telephones for which it has paid, pending final judgment by this Court.

## COUNT IV
## COMMON LAW AND STATUTORY CONVERSION MCL 600.2919A

52.    The allegations contained in all prior paragraphs are repeated as though fully set forth herein.

53.    As set forth above, GFE has refused to pay Gee for the cellular telephones shipped by Vertex and has refused to return the cellular telephones for which it has failed to pay to Gee.

54.    Gee has paid Vertex for 14,851 of the cellular phones Vertex has shipped to GFE in accordance with the Agreement and accordingly, Gee is lawfully entitled to the cellular telephones, which GFE has failed to pay for under the Agreement.

55.    GFE's actions, as set forth above, including the use of the SEKO facility to wrongfully detain the cellular phones GFE has failed to pay for, and refusal to deliver the cellular telephones to Gee despite Gee's demands, constitutes the exercise of unlawful dominion and control of the cellular telephones.

56.    GFE's actions, as set forth above, including the use of the SEKO facility to wrongfully detain the cellular phones GFE has failed to pay for, and refusal to deliver the

cellular telephones to Gee despite Gee's demands, constitutes common law and statutory conversion under MCL 600.2919a.

57.    Pursuant to MCL 600.2919a, as a result of GFE's conversion of the cellular telephones, Gee is entitled to recover 3 times the amount of its actual damages sustained as a result of the conversion, plus its costs and reasonable attorney fees

58.    Pursuant to MCL 600.2919a, Gee is entitled to recover 3 times the amount of its actual damages sustained as a result of the conversion, plus its costs and reasonable attorney fees from Defendant SEKO, jointly and severally, to the extent SEKO has aided, abetted, and or assisted GFE in the conversion of the cellular telephones.

## COUNT V
## UNJUST ENRICHMENT

59.    The allegations contained in all prior paragraphs are repeated as though fully set forth herein.

60.    As set forth above, Gee has paid Vertex for 14,851 of the cellular phones Vertex shipped to for the Turkish transaction.

61.    To the extent GFE has completed the Turkish Transaction and has received payment, in full or in part, for any cellular telephones that it has failed to pay for under the terms of its Agreement with Gee, it has been unjustly enriched at the expense of Gee.

62.    To the extent equity requires, this Court should enter judgment against GFE and in favor of Gee in an amount Gee is found to be entitled in order to prevent GFE unjust enrichment and the expense of Gee.

10

## COUNT VI
## INJUNCTIVE RELIEF-MCR 3.310

63.     The allegations contained in all prior paragraphs are repeated as though fully set forth herein

64.     As set forth above, GFE has wrongfully detained and/or wrongfully exercised dominion and control over cellular phones, which Gee has paid for and to which Gee is entitled to lawful possession.

65.     The cellular telephones at issue are unique as they are specifically modified for the purpose contemplated by the Turkish Transaction, namely, use by the blind or vision impaired in Turkey.

66.     The custom modifications made to the cellular phones by Vertex prior to shipment make them specialized and render them worthless unless they can be sold to Yalçinlar as part of the Turkish Transaction.

67.     Gee will be irreparably harmed if GFE is allowed breach the Agreement and retain possession and control of the cellular telephones which Gee purchased from Vertex.  GFE will cause the Cellular Phones to be shipped out of the County in accordance with the Turkish Transaction, leaving Gee without an adequate remedy at law.

68.     In order to prevent irreparable injury to Gee, before its claims can be decided on the merits, it is necessary to prohibit Defendants from transferring, shipping, or otherwise disposing of the cellular phones subject to the Agreement.

69.     Pursuant to MCR 3.310, this Court can and should enter an order granting injunctive relief to Gee, by preserving the status quo and prohibiting defendants from transferring, shipping, or otherwise disposing of the cellular phones subject to the Agreement

11

until further order of the Court, or in the alternative, awarding Gee possession of the cellular telephones subject to the Agreement pending final judgment.

**WHEREFORE**, Plaintiff Gee respectfully requests this Court to:

A.      Enter a an Order pursuant to MCR 3.310 preserving the status quo and prohibiting Defendants from transferring, shipping, or otherwise disposing of the cellular phones subject to the Agreement until further order of the Court, or in the alternative, awarding Gee possession of the cellular telephones subject to the Agreement pending final judgment.

B.      Entering an Order for claim and delivery under MCR 3.105 granting Gee possession of the cellular telephones subject to the Agreement pending final judgment and requiring Defendant Gee to post a bond as security for the amounts presently due and owing under the Agreement for the cellular phones.

C.      Enter a Judgment in favor of Gee and against Defendants for an amount to which Defendants are found to be liable to Gee;

D.      Enter a Judgment in favor of Gee and against Defendants for 3 times the amount of Gee's actual damages, plus its costs and reasonable attorney fees under MCL 600.2919a

E.      Grant Gee such other relief as the Court deems equitable and just.

Respectfully submitted,

HOWARD & HOWARD ATTORNEYS PLLC

By: /s/ *Miles T. Macik* (P63262)
    Patrick M. McCarthy (P49100)
    Mark W. Peyser (P35473)
    Miles T. Macik (P63262)
    101 North Main Street, Suite 610
    Ann Arbor, MI  48104-1475
    Telephone:  (734) 222-1483
    Fax:  (734) 761-5957

Dated:  October 9, 2012

# EXHIBIT 1

Gee Holdings, LLC
222 Lakeview Avenue, Suite 1400
West Palm Beach, FL

Global Financial Enterprises, LLC
3125 W Commercial Blvd, Suite 100
Ft Lauderdale, FL 33309

Attention: Mr. Sam Halim, CEO/Managing Partner

Subject: Smartphones for the Blind

Dear Mr. Halim:

Reference is made to that certain Sales Contract between the Global Financial Enterprises LLC, limited liability with its main office located in Florida (the "Company") and YALÇINLAR LTD. ŞTI (the "Buyer") as of the 12th day of June, 2011, (an English language copy of which is attached hereto and referred to as the "Sales Contract"). Also attached hereto is a copy of that certain Letter of Understanding by and between Vertex Wireless LLC (the "Seller") and Gee Holdings, LLC ("Gee") dated as of the 28th day of July, 2001 (the "Purchase Agreement").

Pursuant to the Sales Contract, the Company has agreed to sell to the Buyer the mobile telephones upon the terms and conditions set forth therein. Gee has entered into the Purchase Agreement in order to assist the Company in the fulfillment of the Company's obligations to Buyer under the Sales Contract. Gee has not, and will not, assume any of the obligations of the Company under the Sales Contract. Accordingly, for good and valuable consideration, the receipt of which is acknowledged by the Company, the Company hereby agrees to perform all of the obligations of Gee under the Purchase Agreement including the payment of all moneys due thereunder. Gee will make the payment due under the Purchase Agreement and the Company will reimburse Gee at a rate of $312.56 per mobile phone unit and will make such payment within 30 days of shipment by the Seller. Any additional fees from the Seller for changes or additions will be billed to the Company. Payments not made within 30 days will be subject to interest at the rate of 29% per annum.

Gee makes no representation or warranty that the items produced by Seller under the Purchase Agreement are fit for any purpose and the Company shall bear all risk that the items acquired pursuant to the Purchase Agreement comply with the terms of the Sales Contract.

If the Company is in agreement with the terms of this letter agreement, kindly execute and return the attached copy.

Very truly yours,

Gee Holdings, LLC

Ron Garriques, CEO

Accepted by:

Signature

Sam Halim

CEO/Managing Partner

Global Financial Enterprises LLC

Date: 07/25/11



# PURCHASE ORDER

## Order No. 0001500

Issued on Thu, 22 September , 2011

Created on Thu, 22 September 2011 by Sezai Yalçın

| | | |
|---|---|---|
| **SUPPLIER : GFE COMPANY** <br> FT Lauderdale, FL 33309 <br> 3125 W. Commercial Blvd. Suite <br> 100,USA | **SHIP TO :** YALÇINLAR LTD. ŞTİ. <br> 1042 cadde 57/13 öveçler – <br> Çankaya ANKARA – TURKEY <br> 06240 Phone: +90 312 481 16 12 <br> pbx Fax: +90 312 481 16 10 | **BILL TO :** YALÇINLAR LTD. ŞTİ. <br> 1042 cadde 57/13 öveçler – <br> Çankaya ANKARA – TURKEY <br> 06240 Phone: +90 312 481 16 12 <br> pbx Fax: +90 312 481 16 10 |

| ITEM | DESCRIPTION | NEED BY | UNIT QUANTITY | UNIT PRICE USD($) | EXTENTED AMOUNT USD($) |
|---|---|---|---|---|---|
| 1 | 10 inches Dell logos tablet PC – froyo OS – 1GB ram – 16 GB storage- wifi-capacitive touch – 1024x768 resolution | November 1, 2011 | 10000 | 400 | 4000000 usd |

**Note :** Prices are CIF

**CONDITIONS :**

1)**WARRANTY :** two years warranty will be provided by GFE Company

2)**TURKISH KEYBOARD :** Turkish character set will be put on keyboard by GFE Company

3)**BOX DESIGN :** All marks , letters and symbols on box will be provided by GFE Company

4)**SHIPMENT :** shipment to Turkey will be supplied by GFE Company

5)**MANUAL :** Turkish user manual of tablets will be provided by GFE Company

6) PO is valid only after confirmation of AVEA Company about quality control on tablets

**Delivery Contact :** Mr. Sezai KAPLAN

**Main Office:** *Yalçınlar Elektronik Ltd. Şti. 1042 cadde 57/13 Öveçler – Çankaya – ANKARA-TURKEY*

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

GEE PARTNERSHIP HOLDINGS, LLC,
a Delaware limited liability company, f/k/a
Gee Holdings, LLC,

        Plaintiff,

v.

GLOBAL FINANCIAL ENTERPRISES, LLC,
a Florida limited liability company, and
TANBAR LTD. d/b/a SEKO WORLDWIDE.
a Michigan corporation,

        Defendants.

_____/

Case No. 12-013366-CK
Hon. Jeanne Stempien    12-013366-CK

FILED IN MY OFFICE
WAYNE COUNTY CLERK
10/17/2012 3:18:29 PM
CATHY M. GARRETT
/s/ Michelle Howard

**HOWARD & HOWARD ATTORNEYS PLLC**
By:    Patrick M. McCarthy (P49100)
        Mark W. Peyser (P35473)
        Miles T. Macik (P63262)
Attorneys for Plaintiff
101 N. Main Street, Ste. 610
Ann Arbor, MI  48104-1475
Telephone:  (734) 222-1483
Fax:  (734) 761-5957

_____/

## ORDER FOR TEMPORARY RESTRAINING ORDER

At a session of the Court held in the City of Detroit,
County of Wayne, State of Michigan
on:  October 17 12 2012

PRESENT:  THE HONORABLE
Circuit Court Judge

WENDY M. BAXTER A/F
JUDGE JEANNE STEMPIEN
/s/ Sterling Harrison

This matter having come before the Court on Plaintiffs *Ex Parte* Motion for Temporary

Restraining Order and Order to Show Cause why a Preliminary Injunction should not be issued,

the Court having reviewed Plaintiffs *Ex Parte* Motion (the "Motion") and the Affidavit

submitted in support of the relief requested in the Motion, and the Court being otherwise fully advised in the premises:

IT IS HEREBY ORDERED that Plaintiff's Motion is granted;

IT IS FURTHER ORDERED that the Court finds that based on the facts set forth in the Complaint, Motion and Affidavit submitted in support of the Motion, irreparable harm will result to Plaintiff either from the delay to effect notice on Defendants or from the risk that the notice will itself precipitate adverse action before an order can be issued;

IT IS FURTHER ORDERED that the Court finds that based on the facts set forth in the Complaint, Motion and Affidavit submitted in support of the Motion, Plaintiff Gee will suffer irreparable harm in the event the cellular phones subject to the Agreement between Plaintiff Gee and Defendant GFE are shipped, transferred, or otherwise disposed of by Defendant GFE or Defendant Tanbar prior to a preliminary injunction hearing on the issues of fact and law set forth in Plaintiff's Motion;

IT IS FURTHER ORDERED that in order preserve the status quo, Defendant GFE, Defendant Tanbar and their owners, shareholders, members, officers, directors, employees agents and assigns are herby enjoined from taking any action to ship, transfer or otherwise dispose of any cellular telephone shipped by non-party Vertex in connection with the Agreement between Plaintiff Gee and Defendant, attached to the Motion as **Exhibit 1,** until further order of the Court;

IT IS FURTHER ORDERED that Defendants are ordered to appear on 10/25/12 _____, 2012 at 10:00 am _____ and show cause why a preliminary injunction should not be issued extending the relief granted in this Order until further order of the Court;

2

**IT IS FURTHER ORDERED** that in accordance with MCR 3.310, the terms of this Order shall expire 14 days after the entry of this Order, unless with such time, good cause is shown or unless the Defendants consent to extend the terms of this order for a longer period.

**IT IS SO ORDERED.**

/s/ Jeanne Stempien

THE HONORABLE JEANNE STEMPIEN
Circuit Court Judge

#2081829-v2

3

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

GEE PARTNERSHIP HOLDINGS, LLC,
a Delaware limited liability company, f/k/a
Gee Holdings, LLC,

        Plaintiff,

v.

GLOBAL FINANCIAL ENTERPRISES, LLC,
a Florida limited liability company, and
TANBAR LTD. d/b/a SEKO WORLDWIDE.
a Michigan corporation,

        Defendants.

_____/

Case No.   12-013366-CK
Hon. Jeanne Stempien    **12-013366-CK**

**FILED IN MY OFFICE
WAYNE COUNTY CLERK
10/17/2012 3:18:29 PM
CATHY M. GARRETT**

**HOWARD & HOWARD ATTORNEYS PLLC**
By:    Patrick M. McCarthy (P49100)
       Mark W. Peyser (P35473)
       Miles T. Macik (P63262)
Attorneys for Plaintiff
101 N. Main Street, Ste. 610
Ann Arbor, MI 48104-1475
Telephone: (734) 222-1483
Fax: (734) 761-5957

_____/

### PLAINTIFF'S *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT BE ISSUED

    Plaintiff Gee Partnership Holdings, LLC f/k/a Gee Holdings, LLC ("Gee"), for its Motion

for Temporary Restraining Order and Order to Show Cause why a Preliminary Injunction Should

Not Be Issued, states as follows:

    1.    This dispute involves a contractual relationship between Gee Partnership

Holdings, LLC f/k/a Gee Holdings, LLC ("Gee") and Global Financial Enterprises, LLC

#2081426-v2

("GFE").  Presently, more than $2,000,000.00 in customized cellular telephones, purchased by Gee, are sitting in a storage facility in Romulus, Michigan under the control the GFE and on the verge of being shipped out of the country.

2.      As described in further detail in the accompanying Brief in Support, GFE, who agreed to purchase the cellular phones at issue from Gee under the terms of a Letter Agreement (**Exhibit 1**, the "Agreement"), has breached the Agreement and refused to make payment to Gee. The terms of the Agreement specifically required GFE to make payment to Gee upon the shipment of the cellular telephones to GFE.  GFE has undeniably breached the Agreement by failing to make more than $2,000,000.00 in required payments to Gee for cellular telephones that were shipped to GFE.

3.      Despite GFE's breach and failure to make payment to Gee, GFE nonetheless has control of the cellular telephones, which are presently located in a storage facility and are on the verge of being shipped out of the County at GFE's direction.

4.      ***Absent this Court's immediate assistance, GFE will likely ship the unique and customized cellular phones at issue to Europe*** as part of a separate transaction between GFE and Yalçinlar Ltd., a non-party Turkish entity (the "Turkish Transaction").  If GFE is permitted to do so, not only will GFE be unjustly enriched at the expense of Gee, but more importantly, Gee will lose its unquestionable legal right under Michigan law to ***immediate possession*** of the customized cellular telephones it purchased, and be left without an adequate remedy at law.

5.      As set forth in the accompanying Brief in Support and the attached affidavit (**Exhibit 3**), as a result of Gee's efforts and payment to third party Vertex for the cellular telephones at issue, GFE received 21,051 cellular telephones, each of which was specifically modified for the Turkish Transaction.  **Exhibit 2**, Complaint, ¶¶ 17, 19; **Exhibit 3**, Affidavit of

2

C. Favret, at ¶¶ 14–16.   Significantly, the *custom modifications to the cellular telephones at issue make them specialized and render them worthless unless they can be sold to Yalcinlar as part of the Turkish Transaction.* **Exhibit 2**, Complaint, ¶ 18; **Exhibit 3,** Affidavit of C. Favret, at ¶ 14.

6.     It is undisputed that Vertex shipped 16,051 cellular telephones to GFE.  It is also undisputed that GFE has failed to make the payments required by the Agreement to Gee for upon shipment of the cellular phones.  Under Michigan law, not only has GFE breached its contractual obligations under the Agreement, but the undisputed facts of this case, as set forth in the attached Complaint (**Exhibit 2**) and Affidavit of C. Favret (**Exhibit 3**) entitle Gee to immediate possession of the cellular telephones it has paid for.

7.     Gee has filed this Motion, and requests this Court to enter the Temporary Restraining Order attached as **Exhibit 4**, which merely preserves the *status quo*, by precluding Defendants GFE and a Tanbar LTD ("SEKO") (the agent of GFE and entity that controls the Romulus Michigan facility where the cellular phones are stored) from taking any further steps to cause any of the cellular phones subject to the Agreement from being disposed, shipped or released, until such time as this Court can conduct a preliminary injunction hearing to determine the issue of possession of the cellular telephones pending a final judgment in this case.

8.     In the absence of the injunctive relief requested, Gee will be deprived of its unquestionable legal right to possess unique and customized cellular telephones that can only be utilized for the Turkish Transaction.

9.     Moreover, GFE has recently suspended all communications with Gee.  GFE not only has present possession and control of the cellular telephones to which Gee is entitled, but it also has the immediate ability to ship or to cause its agent, SEKO, to ship the goods out of

County, in connection with the Turkish Transaction.  To do so would leave Gee without an adequate remedy at law and without the ability to collect any of the amounts due and owing from GFE, which according to Gee's sources is experiencing financial difficulties that significantly impact GFE's solvency.  **Exhibit 3**, Affidavit of C. Favret, at ¶¶ 25, 26.

10.      Given the facts set forth in paragraph 9 above, Gee has legitimate reason to believe that any effort to notify GFE of the relief requested in this *ex parte* motion will result in the shipment, removal, or disposition of the cellular telephones in dispute, prior to the ability of this Court to enter an order preserving the *status quo* pending a preliminary injunction hearing. For these reasons, the notice requirement of MCR 3.310(B) should not be required.

11.      For these reasons and the reasons set forth in the accompany Brief in Support, Gee respectfully requests this Court to enter the Temporary Restraining Order attached at **Exhibit 4**, which merely preserves the *status quo* by (1) temporality enjoining GFE and its agent SEKO from taking any action to ship, remove or otherwise dispose of any cellular telephones subject to the Agreement in their possession or control pending further order of the Court; (2) setting a date and time, pursuant to MCR 3.310 for the Defendants to appear and show cause why a Preliminary Injunction should not be issued granting possession of the cellular telephones at issue to Gee pending final judgment in this case, and (3) granting Gee such other relief the Court deems equitable and just.

12.      In support of its Motion, Gee relies on the facts and law set forth herein, as well as in the accompanying Brief, and the discretion of this Court.  In addition, Gee directs this Court's attention to the Affidavit of Charles Favret attached as **Exhibit 3**.  Mr. Favret is not only an employee of Gee, but is also a consultant for GFE with respect to the Turkish Transaction and the cellular telephones at issue, which gives him knowledge of the facts at issue from both

4

Plaintiff Gee and Defendant GFE.  **Exhibit 3**, at ¶3-4.

WHEREFORE, Plaintiff Gee respectfully requests this Court to grant its Motion, enter the proposed order attached as **Exhibit 4**, and grant Gee such other relief the Court deems equitable and Just

Respectfully submitted,

**HOWARD & HOWARD ATTORNEYS PLLC**

By:   */s/ Miles T. Macik*
     Patrick M. McCarthy (P49100)
     Mark W. Peyser (P35473)
     Miles T. Macik (P63262)
     101 North Main Street, Suite 610
     Ann Arbor, MI  48104-1475
     Telephone:  (734) 222-1483
     Fax:  (734) 761-5957

Dated: October 10, 2012

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

GEE PARTNERSHIP HOLDINGS, LLC,
a Delaware limited liability company, f/k/a
GEE HOLDINGS, LLC,

          Plaintiff,

v.

GLOBAL FINANCIAL ENTERPRISES, LLC,
a Florida limited liability company, and
TANBAR LTD. d/b/a SEKO WORLDWIDE.
a Michigan corporation,

          Defendants.

_____/

Case No. 12-013366-CK
Hon. Jeanne Stempien

**HOWARD & HOWARD ATTORNEYS PLLC**
By:    Patrick M. McCarthy (P49100)
       Mark W. Peyser (P35473)
       Miles T. Macik (P63262)
Attorneys for Plaintiff
101 N. Main Street, Ste. 610
Ann Arbor, MI  48104-1475
Telephone:  (734) 222-1483
Fax:  (734) 761-5957

_____/

## BRIEF IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT BE ISSUED

**I.**     **INTRODUCTION**

    This dispute involves a contractual relationship between Gee Partnership Holdings, LLC

f/k/a Gee Holdings, LLC ("Gee") and Global Financial Enterprises, LLC ("GFE").  This case

boils down to the undisputed fact that more than $2,000,000.00 in customized cellular

telephones, purchased by Gee, are presently sitting in a storage facility in Romulus, Michigan

under the control the GFE and are on the verge of being shipped out of the country. As described in further detail below, GFE, who agreed to purchase the cellular phones at issue from Gee under the terms of a Letter Agreement (**Exhibit 1**, the "Agreement"), has refused to make payment to Gee. These cellular telephones are on the verge of being shipped out of the County at the direction of GFE. Absent this Court's assistance, GFE will likely ship the unique and customized cellular phones to Europe as part of a separate transaction between GFE and Yalçinlar Ltd., a non-party Turkish entity. If GFE is permitted to do so, not only will GFE be unjustly enriched at the expense of Gee, but more importantly, Gee will lose its unquestionable legal right under Michigan law to immediate possession of the customized cellular telephones it purchased, and be left without an adequate remedy at law.

Accordingly, Gee has filed this Motion, and requests this Court to enter a Temporary Restraining Order that merely preserves the *status quo*, by precluding Defendants GFE and a Tanbar LTD ("SEKO") (GFE's agent and the entity that controls the Romulus Michigan facility where the cellular phones currently are stored) from taking any steps to cause any of the cellular phones subject to the Agreement from being disposed, shipped or released, until such time as this Court can conduct a preliminary injunction hearing to determine the issue of possession of the cellular telephones pending a final judgment in this case.

For these reasons and the reasons set forth below, this Court should grant the Gee's Motion and enter the temporary restraining order attached to the accompanying Motion as **Exhibit 4**.

## II.    FACTS

Gee delivers innovative services and solutions to the technology, consumer electronics, and mobility industries.  As part of its business operations, Gee provides consulting services to, and acquires and manages emerging technology companies.  **Exhibit 2,** Complaint, ¶ 4; **Exhibit 3,** Affidavit of C. Favret, at ¶ 6.  In 2011, GFE found itself in need of Gee's assistance and expertise in connection with a business transaction with Yalçinlar Ltd., a non-party Turkish corporation (hereafter the "Turkish Transaction").  The Turkish Transaction obligated GFE to provide over 80,000 customized cellular telephones to Yalçinlar.  Specifically, in June 2011, GFE entered into a Sales Contract with Yalçinlar under which GFE initially agreed to provide Yalçinlar sixty-six thousand cellular telephones.  **Exhibit 2**, Complaint, ¶ 11; **Exhibit 3,** Affidavit of C. Favret, at ¶ 9.  Subsequently, on or about November 17, 2011, Yalçinlar requested an additional twenty thousand cellular telephones from GFE under the Sales Contract, bringing the total due from GFE to Yalçinlar to eighty-six thousand (86,000). **Exhibit 2** Complaint, ¶ 11; **Exhibit 3,** Affidavit of C. Favret, at ¶ 9.

Realizing it required the assistance of Gee to meet its contractual commitment to Yalçinlar, on July 28, 2011, GFE entered into the Agreement with Gee (**Exhibit 1**).  **Exhibit 2,** Complaint, ¶ 12; **Exhibit 3,** Affidavit of C. Favret, at ¶¶ 10, 11.  In connection with the Agreement, Gee provided two major components of assistance to GFE.  **First**, in order to assist GFE in acquiring the massive number of cellular phones it needed to complete the Turkish Transaction, Gee entered into a separate purchase agreement with non-party Vertex (the "Vertex Purchase Agreement").  Under the Agreement, GFE expressly assumed Gee's performance and obligations under the Vertex Purchase Agreement. **Exhibit 2,** Complaint, ¶ 14; **Exhibit 3,** Affidavit of C. Favret, at ¶ 12.  As part of the Agreement, however, Gee agreed to make payment

directly to Vertex for the cellular phones, and GFE agreed to pay or "reimburse" Gee $312.56 for each cellular phone that was shipped by Vertex to GFE. **Exhibit 2,** Complaint, ¶ 14; **Exhibit 3,** Affidavit of C. Favret, at ¶ 13. The Agreement required GFE to make payment to Gee within 30 days of shipment of the cellular phones. **Exhibit 2,** Complaint, ¶ 15; **Exhibit 3,** Affidavit of C. Favret, at ¶ 14.

**Second,** Gee negotiated several agreements with Vertex under which Vertex modified the cellular phones it provided to GFE for the Turkish Transaction. **Exhibit 2,** Complaint, ¶ 16; **Exhibit 3,** Affidavit of C. Favret, at ¶ 15. Specifically, Vertex modified the cellular telephones by flashing them with custom software, screen printing the exterior of the cellular telephones, bringing together a specific set of accessories, and packaging the cellular telephones in a custom box. **Exhibit 2,** Complaint, ¶ 17; **Exhibit 3,** Affidavit of C. Favret, at ¶¶ 15, 16. The modified Cellular telephones are only usable in Turkey. **Exhibit 2,** Complaint, ¶ 18; **Exhibit 3,** Affidavit of C. Favret, at ¶ 15. The Vertex modifications are custom, making the cellular telephones unique and extremely difficult and costly to reproduce. **Exhibit 2,** Complaint, ¶ 18; **Exhibit 3,** Affidavit of C. Favret, at ¶ 16.

Based on Gee's efforts and negotiations with Vertex, Vertex provided and shipped approximately 21,051 cellular telephones to GFE specifically modified for the Turkish Transaction. **Exhibit 2,** Complaint, ¶ 19; **Exhibit 3,** Affidavit of C. Favret, at ¶ 17. The custom modifications to the cellular phones at issue make them specialized and render them worthless unless they can be sold to Yalçinlar as part of the Turkish Transaction. **Exhibit 2,** Complaint, ¶ 18; **Exhibit 3,** Affidavit of C. Favret, at ¶ 15.

Between November 18, 2011 and March 30, 2012, Vertex shipped 16,051 cellular telephones to GFE. **Exhibit 3,** Complaint, ¶ 20; **Exhibit 3,** Affidavit of C. Favret, at ¶ 18. Gee

has paid Vertex for 14,851 of the cellular telephones it shipped to GFE between November 18, 2011 and March 30, 2012.   Moreover, Despite GFE's clear and unequivocal contractual commitment to pay Gee upon shipment by Vertex, GFE has failed to complete the transaction by making only partial payment to Gee.  To date, GFE has failed to pay Gee for $7,751 cellular phones it received from Vertex.   **Exhibit 3,** Affidavit of C. Favret, at ¶ 21.  The balance presently due and owing to Gee under the Agreement is $2,416,263.40, not including interest and late fees. **Exhibit 2,** Complaint, ¶ 23; **Exhibit 3,** Affidavit of C. Favret, at ¶ 22.

The cellular telephones shipped by Vertex are held in storage by Defendant SEKO in its Romulus, Michigan storage facility pursuant to a contractual arrangement between SEKO and GFE.   **Exhibit 2,** Complaint, ¶ 24; **Exhibit 3,** Affidavit of C. Favret, at ¶ 23.  At this time, however, Gee is uncertain as to how many of the 16,051 cellular telephones remain at the SEKO facility.  GFE has not only refused to pay Gee the $2,416,263.40 owed for the cellular telephones under the Agreement, but is has also ceased all communications with Gee, leaving Gee with no access or control over the cellular phones in the SEKO facility. **Exhibit 2,** Complaint, ¶ 26; **Exhibit 3,** Affidavit of C. Favret, at ¶ 23-24.

Gee has recently learned that GFE is experiencing financial difficulties that significantly impact GFE's solvency.  **Exhibit 3,** Affidavit of C. Favret, at ¶¶ 25, 26.  As noted above, the customized cellular phones at issue are designed specifically for the Turkish transaction and are worthless unless they can be sold to Yalçinlar.  Accordingly, if GFE is able to ship, release, or otherwise dispose of the cellular phones without making payment to Gee, Gee will be left without an adequate remedy at law.  For this reason, Gee was forced to file this lawsuit and this *Ex Parte* Motion, temporarily enjoining the Defendants from disposing of the cellular phones at issue in the Agreement, and seeking possession of the customized cellular telephones it

purchased from Vertex.

### III.   ARGUMENT

Under Michigan law, the Court must consider four factors in deciding whether to grant a temporary restraining order and/or preliminary injunction:

1.      Whether the movant has a reasonable likelihood of prevailing on the merits;

2.      Whether it is sufficiently demonstrated that the movant will suffer irreparable injury if an injunction is not granted;

3.      Whether the harm to the movant, in the absence of an injunction, outweighs the harm to the opposing party if the injunction is granted; and

4.      Whether the best interests of the public will be served by issuance of an injunction.

*MSEA v Dept of Mental Health*, 421 Mich 152, 157-58; 365 NW2d 93 (1984).

This Court should also consider whether a temporary restraining order and preliminary injunction "will preserve the status quo so that a final hearing can be held without either party having been injured." *Campau v McMath*, 185 Mich App 724, 728-729; 463 NW2d 186 (1990) (citing *Bratton v DAIIE*, 120 Mich App 73, 79, 327 NW2d 396 (1982)).  Status quo is the parties' "last actual, peaceable, noncontested status preceding the pending controversy." *Id.* at 731. Here, the last actual, peaceable, non-contested status preceding this dispute requires a constructive trust to be placed on cellular telephones in SEKO's facility that are subject to the Agreement.  Here, the relief requested by Gee with preserve the status quo and ensure the cellular phones at issue are not disposed of before the legal issue of the right of possession can be heard on the merits.

## A.    Gee Will Prevail On The Merits

By refusing to pay Gee and refusing to complete the purchase of the cellular telephones under Agreement, Defendant GFE has breached the Agreement.  The elements of a breach of contract cause of action are that a contract existed between the parties and that a breach of one or more of the contractual terms occurred. *See* SJI2d 140.01; *American Parts Co, Inc v American Arbitration Ass'n*, 8 Mich App 156, 166; 154 NW2d 5 (1967).  The clear and unambiguous terms of the contract require GFE to make payment to Gee within 30 days of the shipment of the cellular telephones by Vertex.  **Exhibit 1**.  It is undisputed that GFE has failed to make the required payment to Gee in violation of the Agreement.

Not only will Gee clearly prevail on its contractual claims, but as a matter of law, Gee is entitled to immediate possession the cellular telephones.  The cellular telephones were delivered pursuant to a contract for the sale of goods.  Under Michigan law, Gee is entitled to reclaim the goods to which it has not received payment.  M.C.L.A. § 440.2507(2); *Genesee Merchants Bank & Trust v Tucker Motor Sales*, 372 NW2d 546, 548 (Mich Ct App 1985).  Gee is also entitled to claim and delivery relief because GFE has unlawfully detained cellular telephones which Gee purchased from Vertex.  *Joseph P. Galasso Revocable Living Trust v Surverybrain.com, LLC*, No. 303300, 2012 WL 1698411, at *3 (Mich Ct App May 15, 2012).  This is consistent with the provisions of MCR 3.105(E), which entitle Gee to possession of the cellular telephones pending final judgment given the facts set forth in this brief which describe the property in question, establish the amount at issue, and establish the imminent threat that the cellular telephones will be disposed of absent the relief requested in this Motion.

## B.    Gee Will Suffer Irreparable Injury If A TRO Is Not Granted

Gee will be irreparably harmed if GFE is allowed breach the Agreement and retain

possession and control of the cellular telephones which Gee purchased from Vertex. The cellular telephones at issue are unique as they are specifically modified for the purpose contemplated by the Turkish Transaction, i.e., use by the blind or vision impaired in Turkey. **Exhibit 3**, Affidavit of C. Favret, at ¶¶ 15, 16. *See W. Mich. Environ. Action Counsel v. Natural Resources Comm'n*, 405 Mich. 741, 760, 275 NW2d 538 (1979) (uniqueness nature of goods at issue is sufficient to show irreparable injury and support the issuance of an injunction). The unique nature of the cellular telephones subject to the Agreement cannot be questioned. The custom modifications to the cellular phones makes them specialized and renders them worthless unless they can be sold to Yalçinlar as part of the Turkish Transaction. **Exhibit 2,** Complaint, ¶ 18; **Exhibit 3,** Affidavit of C. Favret, at ¶¶ 15, 16. Therefore, in order to prevent irreparable injury to Gee, before its claims can be decided on the merits, it is necessary to prohibit any change in the conditions and relations of the property and of the parties during the litigation. *Consumers Power Co. v. Mich. Public Service Comm'n*, 415 Mich 134, 154, 327 NW2d 875, 883 (1982); *Baltic Mining Co. v. Houghton Circuit Judge*, 177 Mich 632, 643, 144 NW 209 (1913).

Under Michigan law, a constructive trust may be imposed over property to avoid unjust enrichment and promote equity. *Morris Pumps v Centerline Piping*, 273 Mich App 187, 200, 729 NW2d 898, 908 (Mich Ct App. 2006). Any circumstances that render it unconscionable for the holder of legal title to retain property justify the imposition of a constructive trust. *Morris Pumps*, 273 Mich App at 200, 729 NW2d at 908. It would be unjust and unconscionable for GFE to take the cellular telephones purchased by Gee, refuse to pay Gee for those same telephones, and in turn sell them to Yalçinlar. This is especially significant here, given what Gee has recently learned about GFE's current financial status and inability to honor its other contractual commitments. **Exhibit 3**, Affidavit of C. Favret, at ¶¶ 25, 26. Indeed, in addition to

Gee's unquestionable right to possession of the cellular telephones at issue, Michigan Courts have also held that the right to recover a worthless judgment is not an adequate remedy at law. *See O'Melia v Berghoff Brewing Corp*, 304 Mich 471, 479; 8 NW2d 141, 145 (1943); *Nat'l Concessions, Inc v Nat'l Circus Corp*, 347 Mich 335, 339-40; 79 NW2d 910, 912 (1956).

**C.      The Harm To Gee In The Absence Of A TRO Is Greater Than The Harm To GFE If A TRO Is Granted**

As opposed to the immediate irreparable injury Gee will suffer in the absence of a Temporary Restraining Order, GFE will suffer no harm whatsoever if GFE and SEKO are enjoined from disposing of the cellular telephones at issue pending further order of this Court. In fact, the injunctive relief sought by Gee will do nothing more than preserve the *status quo* under the Agreement and enable GFE to operate its business with minimal disruption. Given the undisputed facts relating to Gee's payment to Vertex for the purchase of the cellular telephones and GFE's failure to make the required payments to Gee under the Agreement, GFE has no right to the cellular telephones at issue, and should not be allowed to dispose of them prior to judgment in this case or a hearing on Gee's right to possession pending judgment. Gee only requests that this Court maintain the status quo until the merits of this case can be determined. *Campau*, 185 Mich App at 728-729; 463 NW2d 186 (1990)

**D.      A TRO Will Serve The Best Interests Of The Public**

It is in the public's interest to preclude GFE from unjustly enriching itself through its control and sale of the customized cellular telephones, which it has not purchased. If GFE is not enjoined and disposes of or ships the cellular telephones out of the Country in connection with the Turkish Transaction, Gee will be left without an adequate remedy at law. Accordingly, the public interest favors granting Gee's requested injunctive relief until further resolution of this case on the merits.

**E.     No Security Should Be Required**

Gee seeks limited injunctive relief, which will not interfere with Defendants' ability to run their business.  Moreover, the cellular telephones at issue have already been purchased by Gee.  Therefore, no security should be required under MCR 3.310(D).

**IV.     CONCLUSION**

For all of the above reasons, Gee respectfully requests this Court to enter the Temporary Restraining Order attached at **Exhibit 4**, set a date and time for a preliminary injunction hearing in accordance with the provisions of MCR 3.310, and grant Gee such other relief the Court deems equitable and just.

Respectfully submitted,

**HOWARD & HOWARD ATTORNEYS PLLC**

By:___ */s/ Miles T. Macik*_____
     Patrick M. McCarthy (P49100)
     Mark W. Peyser (P35473)
     Miles T. Macik (P63262)
     101 North Main Street, Suite 610
     Ann Arbor, MI  48104-1475
     Telephone:  (734) 222-1483
     Fax:  (734) 761-5957

Dated: October 10, 2012

# EXHIBIT 1

Gee Holdings, LLC
222 Lakeview Avenue, Suite 1400
West Palm Beach, FL

Global Financial Enterprises, LLC
3125 W Commercial Blvd, Suite 100
Ft Lauderdale, FL 33309

Attention: Mr. Sam Halim, CEO/Managing Partner

Subject: Smartphones for the Blind

Dear Mr. Halim:

Reference is made to that certain Sales Contract between the Global Financial Enterprises LLC, limited liability with its main office located in Florida (the "Company") and YALÇINLAR LTD. ŞTI (the "Buyer") as of the 12th day of June, 2011, (an English language copy of which is attached hereto and referred to as the "Sales Contract"). Also attached hereto is a copy of that certain Letter of Understanding by and between Vertex Wireless LLC (the "Seller") and Gee Holdings, LLC ("Gee") dated as of the 28th day of July, 2001 (the "Purchase Agreement").

Pursuant to the Sales Contract, the Company has agreed to sell to the Buyer the mobile telephones upon the terms and conditions set forth therein. Gee has entered into the Purchase Agreement in order to assist the Company in the fulfillment of the Company's obligations to Buyer under the Sales Contract. Gee has not, and will not, assume any of the obligations of the Company under the Sales Contract. Accordingly, for good and valuable consideration, the receipt of which is acknowledged by the Company, the Company hereby agrees to perform all of the obligations of Gee under the Purchase Agreement including the payment of all moneys due thereunder. Gee will make the payment due under the Purchase Agreement and the Company will reimburse Gee at a rate of $312.56 per mobile phone unit and will make such payment within 30 days of shipment by the Seller. Any additional fees from the Seller for changes or additions will be billed to the Company. Payments not made within 30 days will be subject to interest at the rate of 29% per annum.

Gee makes no representation or warranty that the items produced by Seller under the Purchase Agreement are fit for any purpose and the Company shall bear all risk that the items acquired pursuant to the Purchase Agreement comply with the terms of the Sales Contract.

If the Company is in agreement with the terms of this letter agreement, kindly execute and return the attached copy.

Very truly yours,

Gee Holdings, LLC

Ron Garriques, CEO

Accepted by:

Signature

Sam Halim

CEO/Managing Partner

Global Financial Enterprises LLC

Date: 07/25/11



# PURCHASE ORDER

## Order No. 0001500

Issued on Thu, 22 September , 2011

Created on Thu, 22 September 2011 by Sezai Yalçın

| SUPPLIER : GFE COMPANY<br>FT Lauderdale, FL 33309<br>3125 W. Commercial Blvd. Suite 100,USA | SHIP TO : YALÇINLAR LTD. ŞTİ.<br>1042 cadde 57/13 öveçler –<br>Çankaya ANKARA – TURKEY<br>06240 Phone: +90 312 481 16 12<br>pbx Fax: +90 312 481 16 10 | BILL TO : YALÇINLAR LTD. ŞTİ.<br>1042 cadde 57/13 öveçler –<br>Çankaya ANKARA – TURKEY<br>06240 Phone: +90 312 481 16 12<br>pbx Fax: +90 312 481 16 10 |
| --- | --- | --- |

| ITEM | DESCRIPTION | NEED BY | UNIT QUANTITY | UNIT PRICE USD($) | EXTENTED AMOUNT USD($) |
| --- | --- | --- | --- | --- | --- |
| 1 | 10 inches Dell logos tablet PC – froyo OS – 1GB ram – 16 GB storage- wifi-capacitive touch – 1024x768 resolution | November 1, 2011 | 10000 | 400 | 4000000 usd |

Note : Prices are CIF

CONDITIONS :

1)WARRANTY : two years warranty will be provided by GFE Company

2)TURKISH KEYBOARD : Turkish character set will be put on keyboard by GFE Company

3)BOX DESIGN : All marks , letters and symbols on box will be provided by GFE Company

4)SHIPMENT : shipment to Turkey will be supplied by GFE Company

5)MANUAL : Turkish user manual of tablets will be provided by GFE Company

6) PO is valid only after confirmation of AVEA Company about quality control on tablets

Delivery Contact : Mr. Sezai KAPLAN

Main Office: *Yalçınlor Elektronik Ltd. Şti. 1042 cadde 57/13 Öveçler – Çankaya – ANKARA-TURKEY*

# EXHIBIT 2

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

GEE PARTNERSHIP HOLDINGS, LLC,
a Delaware limited liability company, f/k/a
GEE HOLDINGS, LLC,

    Plaintiff,

v.                                                          Case No.  12-          -CK
                                                            Hon.

GLOBAL FINANCIAL ENTERPRISES, LLC,
a Florida limited liability company, and
TANBAR LTD., d/b/a SEKO WORLDWIDE,
a Michigan corporation,

    Defendants.
_____/

**HOWARD & HOWARD ATTORNEYS PLLC**
By:    Patrick M. McCarthy (P49100)
       Mark W. Peyser (P35473)
       Miles T. Macik (P63262)
Attorneys for Plaintiff
101 N. Main Street, Ste. 610
Ann Arbor, MI  48104-1475
Telephone:  (734) 222-1483
Fax:  (734) 761-5957
_____/

## COMPLAINT

        There is no other civil action arising out of the same transaction
        or occurrence as alleged in this Complaint pending in this court
        nor has any such action previously been filed and dismissed
        after having been assigned to a judge.

Plaintiff, Gee Partnership Holdings, LLC f/k/a Gee Holdings, LLC ("Gee"), by and

through its undersigned attorneys, for its Complaint against Defendants, Global Financial

Enterprises, LLC ("GFE") and Tanbar Ltd. d/b/a SEKO Worldwide ("SEKO"), states as follows:

#2077204-v4

Plaintiff, Gee Partnership Holdings, LLC f/k/a Gee Holdings, LLC ("Gee"), by and through its undersigned attorneys, for its Complaint against Defendants, Global Financial Enterprises, LLC ("GFE") and Tanbar Ltd. d/b/a SEKO Worldwide ("SEKO"), states as follows:

## PRELIMINARY STATEMENT

1.     This dispute arises out of a contract between Plaintiff Gee Partnership Holdings, LLC f/k/a Gee Holdings, LLC ("Gee") and Defendant Global Financial Enterprises, LLC ("GFE").   This case boils down to the undisputed fact that more than $2,000,000.00 in customized cellular telephones, purchased by Gee, are presently sitting in a storage facility in Romulus, Michigan under the control the GFE.  As described in further detail below, GFE, who agreed to purchase the cellular phones at issue from Gee under the terms of a contract (**Exhibit 1**, the "Agreement"), has refused to make payment to Gee and breached the Agreement.   These unique and customized cellular phones are on the verge of being shipped out of the County (to Europe) at the direction of GFE as part of a separate transaction between GFE and Yalçınlar Ltd., a non-party Turkish entity.  If GFE is able ship, transfer or otherwise dispose of the cellular phones at issue, not only will GFE be unjustly enriched at the expense of Gee, but more importantly, Gee will lose its unquestionable legal right to immediate possession of the customized cellular telephones it purchased, and be left without an adequate remedy at law.

## PARTIES, JURISDICTION, AND VENUE

2.     The allegations contained in all prior paragraphs are repeated as though fully set forth herein.

3.     Plaintiff Gee is a Delaware limited liability company with its principal place of business in Texas.  Gee conducts business in Oakland and Wayne Counties, Michigan.

2

4.      Gee delivers innovative services and solutions to the technology, consumer electronics, and mobility industries.  As part of its business operations, Gee provides consulting services to, and acquires and manages emerging technology companies.

5.      Defendant GFE is a Florida limited liability company with its principal place of business located in Fort Lauderdale, Florida.   GFE conducts business in Wayne County, Michigan.

6.      Defendant SEKO is a Michigan corporation with its principal place of business in Romulus, Wayne County, Michigan.  SEKO has been named as a necessary party based solely on the fact that it currently has possession of the goods that are the subject this lawsuit pursuant to a contractual arrangement between SEKO and GFE

7.      The goods that are the subject of this lawsuit are located in Wayne County, Michigan at a storage facility owned and/or operated by SEKO.

8.      The amount in controversy, exclusive of interest, costs, and attorney fees, is in excess of $25,000.00 and jurisdiction and venue are otherwise proper with the Court.

## FACTUAL ALLEGATIONS

9.      The allegations contained in all prior paragraphs are repeated as though fully set forth herein.

10.     In 2011, GFE found itself in need of Gee's assistance and expertise in connection with a business transaction with Yalçinlar Ltd., a non-party Turkish corporation (hereafter the "Turkish Transaction").  The Turkish Transaction obligated GFE to provide over 80,000 customized cellular telephones to Yalçinlar.

11.     In June 2011, GFE entered into a Sales Contract with Yalçinlar under which GFE initially agreed to provide Yalçinlar sixty-six thousand cellular telephones.  Subsequently, on or

3

about November 17, 2011, Yalçinlar requested an additional twenty thousand cellular telephones from GFE under the Sales Contract, bringing the total due from GFE to Yalçinlar to eighty-six thousand (86,000).

12.      On July 28, 2011, GFE entered into an Agreement with Gee, under which Gee agreed to assist GFE in meeting its contractual commitment to Yalçinlar (hereafter the "Agreement") (**Exhibit 1**).

13.      In connection with the Agreement, and in order to assist GFE in acquiring the massive number of cellular phones it needed to complete the Turkish Transaction, Gee entered into a separate purchase agreement with non-party Vertex (the "Vertex Purchase Agreement.")

14.      Under the Agreement, GFE expressly assumed Gee's performance and obligations under the Vertex Purchase Agreement. As part of the Agreement, however, Gee agreed to make payment directly to Vertex for the cellular phones.  GFE agreed to pay or "reimburse" Gee $312.56 for each cellular phone that was shipped by Vertex to GFE. (**Exhibit 1**)

15.      The Agreement also required GFE to make payment to Gee within 30 days of shipment of the cellular phones by Vertex. (**Exhibit 1**)

16.      In connection with the Agreement, and in order to assist GFE in acquiring the massive number of cellular phones it needed to complete the Turkish Transaction, Gee also negotiated several agreements with Vertex under which Vertex modified the cellular phones it provided to GFE for the Turkish Transaction.

17.      Vertex modified the cellular telephones specifically for the Turkish Transaction by flashing them with custom software, screen printing the exterior of the cellular telephones,

bringing together a specific set of accessories, and packaging the cellular telephones in a custom box.

18.     The modifications made by Vertex for the Turkish Transaction are custom, making the cellular telephones unique and extremely difficult and costly to reproduce. The custom modifications also render them worthless unless they can be sold to Yalçinlar as part of the Turkish Transaction.

19.     Based on Gee's efforts and negotiations with Vertex, Vertex provided and shipped a total of 21,051 cellular telephones to GFE specifically modified for the Turkish Transaction. This quantity of cellular phones consisted of 20,640 cellular phones kitted with accessories and 411 service stock cellular phones.

20.     Between November 18, 2011 and March 30, 2012. Vertex shipped 16,051 cellular telephones to GFE. This quantity of cellular phones consisted of 15,640 cellular phones kitted with accessories and 411 service stock cellular phones.

21.     In accordance with the Agreement, Gee has paid Vertex for 14,851 of the 16,051 it shipped between November 18, 2011 and March 30, 2012.

22.     GFE, who was contractually obligated to pay Gee upon shipment and delivery by Vertex, has failed to pay Gee in full for the cellular phones it received as required by the agreement.

23.     To date, GFE has only paid Gee for 8,300 of the 16,051 cellular telephones shipped by Vertex between November 18, 2011 and March 30, 2012 and has refused to pay Gee for the remaining 7,751 cellular telephones.

24.     The balance presently due and owing from GFE to Gee under the Agreement is $2,416,263.40, plus interest and late fees.

25.     As noted above, Defendant SEKO, on behalf of GFE, holds the cellular telephones shipped by Vertex in storage in its Romulus, Michigan storage facility pursuant to a contractual arrangement between SEKO and GFE.  At this time, however, Gee is uncertain as to how many of the 16,051 cellular telephones remain at the SEKO facility.

26.     Gee has demanded payment from GFE of the $2,416,263.40, plus interest and late fees, presently due and owing under the Agreement.  In the alternative, Gee has demanded that GFE return the cellular telephones that were shipped by Vertex and remain unpaid for under the terms of the Agreement.

27.     GFE has ceased all communications with Gee, leaving Gee with no access or control over the cellular phones in the SEKO facility.

## COUNT I
## ACTION FOR RECLAMATION PURSUANT TO M.C.L.. § 440.2507

28.     The allegations contained in all prior paragraphs are repeated as though fully set forth herein.

29.     Under the Agreement, GFE was and is required to pay Gee for the cellular telephones shipped by Vertex upon delivery.

30.     Vertex shipped 16,051 cellular telephones between November 11, 2011 and March 30, 2012.

31.     In accordance with the Agreement, GFE was required to submit payment to Gee for the 16,051 cellular telephones that Vertex shipped between November 18, 2011 and March 30, 2012.

32.     As set forth above, GFE has failed to pay Gee in full for the cellular phones shipped by Vertex as required by the Agreement.  GFE only paid Gee for 8,300 of the 16,051

6

cellular telephones shipped by Vertex between November 18, 2011 and March 30, 2012 and has refused to pay Gee for the remaining 7,751 cellular telephones.

33.    Gee has a right to reclaim the cellular telephones for which Gee has yet to receive payment pursuant to M.C.L § 440.2507(2).

## COUNT II
## BREACH OF CONTRACT

34.    The allegations contained in all prior paragraphs are repeated as though fully set forth herein.

35.    Gee and GFE entered into the Agreement whereby GFE was and is required to pay Gee for the cellular telephones shipped by Vertex.

36.    Vertex shipped 16,051 cellular telephones to GFE between November 18, 2011 and March 30, 2012.

37.    Gee fully performed its obligations under the Agreement.

38.    As set forth above, GFE has failed to pay Gee in full for the cellular phones shipped by Vertex as required by the Agreement.

39.    GFE's failure and refusal to pay Gee constitutes a breach of the Agreement.

40.    As a direct and proximate result of GFE's breach of the Agreement, Gee has suffered damages.

41.    Under the Agreement, Gee is entitled to $2,416,263.40, not including interest and late fees, for the cellular telephones that were shipped by Vertex to GFE.

COUNT III
**CLAIM AND DELIVERY PURSUANT TO MCR 3.105**

42.     The allegations contained in all prior paragraphs are repeated as though fully set forth herein

43.     Gee and GFE entered into the Agreement whereby GFE was and is required to pay Gee for the cellular telephones shipped by Vertex.

44.     Vertex shipped 16,051 cellular telephones between November 18, 2011 and March 30, 2012.   The cellular telephones were shipped by Vertex to SEKO's Romulus, Michigan warehouse.

45.     In accordance with the Agreement, Gee paid Vertex for 14,851 of the cellular telephones shipped between November 18, 2011 and March 30, 2012.

46.     As set forth above, GFE has failed to pay Gee for the cellular telephones purchased by Gee and shipped to GFE in accordance with the Agreement and through its agent, SEKO, is unlawfully detaining the cellular phones shipped by Vertex and paid for by Gee.

47.     The cellular telephones, described above, to which Gee is entitled to possession, are portions of divisible property of uniform kind, quality and value.

48.     The present value of the property claimed by Gee is $2,416,263.40, which represents the amount Gee is entitled under the Agreement, not including interest and late fees, for the cellular telephones that were shipped by Vertex and for which Gee has not received payment.

49.     Gee is entitled to the cellular telephones for which it has not received payment because they were sold and delivered to GFE under a contract for the sale of goods and because Gee has paid Vertex for the cellular phones.   GFE has failed to pay for the cellular telephones in

breach of the Agreement between the Gee and GFE and GFE's actions, as set forth above, constitute an unlawful detention of the cellular telephones.

50.    Pursuant to MCR 3.105, Gee is entitled to the return of the cellular telephones for which it has not received payment and for the damages it has incurred as a result of GFE's unlawful detention of the cellular phones.

51.    Pursuant to MCR 3.105, Gee is also entitled to possession of the cellular telephones for which it has paid, pending final judgment by this Court.

**COUNT IV**
**COMMON LAW AND STATUTORY CONVERSION MCL 600.2919A**

52.    The allegations contained in all prior paragraphs are repeated as though fully set forth herein.

53.    As set forth above, GFE has refused to pay Gee for the cellular telephones shipped by Vertex and has refused to return the cellular telephones for which it has failed to pay to Gee.

54.    Gee has paid Vertex for 14,851 of the cellular phones Vertex has shipped to GFE in accordance with the Agreement and accordingly, Gee is lawfully entitled to the cellular telephones, which GFE has failed to pay for under the Agreement.

55.    GFE's actions, as set forth above, including the use of the SEKO facility to wrongfully detain the cellular phones GFE has failed to pay for, and refusal to deliver the cellular telephones to Gee despite Gee's demands, constitutes the exercise of unlawful dominion and control of the cellular telephones.

56.    GFE's actions, as set forth above, including the use of the SEKO facility to wrongfully detain the cellular phones GFE has failed to pay for, and refusal to deliver the

cellular telephones to Gee despite Gee's demands, constitutes common law and statutory conversion under MCL 600.2919a.

57.     Pursuant to MCL 600.2919a, as a result of GFE's conversion of the cellular telephones, Gee is entitled to recover 3 times the amount of its actual damages sustained as a result of the conversion, plus its costs and reasonable attorney fees

58.     Pursuant to MCL 600.2919a, Gee is entitled to recover 3 times the amount of its actual damages sustained as a result of the conversion, plus its costs and reasonable attorney fees from Defendant SEKO, jointly and severally, to the extent SEKO has aided, abetted, and or assisted GFE in the conversion of the cellular telephones.

## COUNT V
## UNJUST ENRICHMENT

59.     The allegations contained in all prior paragraphs are repeated as though fully set forth herein.

60.     As set forth above, Gee has paid Vertex for 14,851 of the cellular phones Vertex shipped to for the Turkish transaction.

61.     To the extent GFE has completed the Turkish Transaction and has received payment, in full or in part, for any cellular telephones that it has failed to pay for under the terms of its Agreement with Gee, it has been unjustly enriched at the expense of Gee.

62.     To the extent equity requires, this Court should enter judgment against GFE and in favor of Gee in an amount Gee is found to be entitled in order to prevent GFE unjust enrichment and the expense of Gee.

## COUNT VI
## INJUNCTIVE RELIEF-MCR 3.310

63.   The allegations contained in all prior paragraphs are repeated as though fully set forth herein

64.   As set forth above, GFE has wrongfully detained and/or wrongfully exercised dominion and control over cellular phones, which Gee has paid for and to which Gee is entitled to lawful possession.

65.   The cellular telephones at issue are unique as they are specifically modified for the purpose contemplated by the Turkish Transaction, namely, use by the blind or vision impaired in Turkey.

66.   The custom modifications made to the cellular phones by Vertex prior to shipment make them specialized and render them worthless unless they can be sold to Yalçinlar as part of the Turkish Transaction.

67.   Gee will be irreparably harmed if GFE is allowed breach the Agreement and retain possession and control of the cellular telephones which Gee purchased from Vertex.  GFE will cause the Cellular Phones to be shipped out of the County in accordance with the Turkish Transaction, leaving Gee without an adequate remedy at law.

68.   In order to prevent irreparable injury to Gee, before its claims can be decided on the merits, it is necessary to prohibit Defendants from transferring, shipping, or otherwise disposing of the cellular phones subject to the Agreement.

69.   Pursuant to MCR 3.310, this Court can and should enter an order granting injunctive relief to Gee, by preserving the status quo and prohibiting defendants from transferring, shipping, or otherwise disposing of the cellular phones subject to the Agreement

until further order of the Court, or in the alternative, awarding Gee possession of the cellular telephones subject to the Agreement pending final judgment.

**WHEREFORE**, Plaintiff Gee respectfully requests this Court to:

A.    Enter a an Order pursuant to MCR 3.310 preserving the status quo and prohibiting Defendants from transferring, shipping, or otherwise disposing of the cellular phones subject to the Agreement until further order of the Court, or in the alternative, awarding Gee possession of the cellular telephones subject to the Agreement pending final judgment.

B.    Entering an Order for claim and delivery under MCR 3.105 granting Gee possession of the cellular telephones subject to the Agreement pending final judgment and requiring Defendant Gee to post a bond as security for the amounts presently due and owing under the Agreement for the cellular phones.

C.    Enter a Judgment in favor of Gee and against Defendants for an amount to which Defendants are found to be liable to Gee;

D.    Enter a Judgment in favor of Gee and against Defendants for 3 times the amount of  Gee's actual damages, plus its costs and reasonable attorney fees under MCL 600.2919a

E.    Grant Gee such other relief as the Court deems equitable and just.

Respectfully submitted,

HOWARD & HOWARD ATTORNEYS PLLC

By: /s/ *Miles T. Macik* (P63262)
    Patrick M. McCarthy (P49100)
    Mark W. Peyser (P35473)
    Miles T. Macik (P63262)
    101 North Main Street, Suite 610
    Ann Arbor, MI 48104-1475
    Telephone: (734) 222-1483
    Fax: (734) 761-5957

Dated: October 9, 2012

# EXHIBIT 1

Gee Holdings, LLC
222 Lakeview Avenue, Suite 1400
West Palm Beach, FL

Global Financial Enterprises, LLC
3125 W Commercial Blvd, Suite 100
Ft Lauderdale, FL 33309

Attention: Mr. Sam Halim, CEO/Managing Partner

Subject: Smartphones for the Blind

Dear Mr. Halim:

Reference is made to that certain Sales Contract between the Global Financial Enterprises LLC, limited liability with its main office located in Florida (the "Company") and YALÇINLAR LTD. ŞTI (the "Buyer") as of the 12th day of June, 2011, (an English language copy of which is attached hereto and referred to as the "Sales Contract"). Also attached hereto is a copy of that certain Letter of Understanding by and between Vertex Wireless LLC (the "Seller") and Gee Holdings, LLC ("Gee") dated as of the 28th day of July, 2001 (the "Purchase Agreement").

Pursuant to the Sales Contract, the Company has agreed to sell to the Buyer the mobile telephones upon the terms and conditions set forth therein. Gee has entered into the Purchase Agreement in order to assist the Company in the fulfillment of the Company's obligations to Buyer under the Sales Contract. Gee has not, and will not, assume any of the obligations of the Company under the Sales Contract. Accordingly, for good and valuable consideration, the receipt of which is acknowledged by the Company, the Company hereby agrees to perform all of the obligations of Gee under the Purchase Agreement including the payment of all moneys due thereunder. Gee will make the payment due under the Purchase Agreement and the Company will reimburse Gee at a rate of $312.56 per mobile phone unit and will make such payment within 30 days of shipment by the Seller. Any additional fees from the Seller for changes or additions will be billed to the Company. Payments not made within 30 days will be subject to interest at the rate of 29% per annum.

Gee makes no representation or warranty that the items produced by Seller under the Purchase Agreement are fit for any purpose and the Company shall bear all risk that the items acquired pursuant to the Purchase Agreement comply with the terms of the Sales Contract.

If the Company is in agreement with the terms of this letter agreement, kindly execute and return the attached copy.

Very truly yours,

Gee Holdings, LLC

Ron Garriques, CEO

Accepted by:

Signature

Sam Halim

CEO/Managing Partner

Global Financial Enterprises LLC

Date: 07/25/11



# PURCHASE ORDER

## Order No. 0001500

Issued on Thu, 22 September , 2011

Created on Thu, 22 September 2011 by Sezai Yalçın

| SUPPLIER : GFE COMPANY | SHIP TO : YALÇINLAR LTD. ŞTİ. | BILL TO : YALÇINLAR LTD. ŞTİ. |
|---|---|---|
| FT Lauderdale, FL 33309 | 1042 cadde 57/13 öveçler – | 1042 cadde 57/13 öveçler – |
| 3125 W. Commercial Blvd. Suite | Çankaya ANKARA – TURKEY | Çankaya ANKARA – TURKEY |
| 100,USA | 06240 Phone: +90 312 481 16 12 | 06240 Phone: +90 312 481 16 12 |
| | pbx Fax: +90 312 481 16 10 | pbx Fax: +90 312 481 16 10 |

| ITEM | DESCRIPTION | NEED BY | UNIT QUANTITY | UNIT PRICE USD($) | EXTENTED AMOUNT USD($) |
|---|---|---|---|---|---|
| 1 | 10 inches Dell logos tablet PC – froyo OS – 1GB ram – 16 GB storage- wifi-capacitive touch – 1024x768 resolution | November 1, 2011 | 10000 | 400 | 4000000 usd |

Note : Prices are CIF

CONDITIONS :

1)WARRANTY : two years warranty will be provided by GFE Company

2)TURKISH KEYBOARD : Turkish character set will be put on keyboard by GFE Company

3)BOX DESIGN : All marks , letters and symbols on box will be provided by GFE Company

4)SHIPMENT : shipment to Turkey will be supplied by GFE Company

5)MANUAL : Turkish user manual of tablets will be provided by GFE Company

6) PO is valid only after confirmation of AVEA Company about quality control on tablets

Delivery Contact : Mr. Sezai KAPLAN

**Main Office:** *Yalçınlar Elektronik Ltd. Şti. 1042 cadde 57/13 Öveçler – Çankaya – ANKARA-TURKEY*

# EXHIBIT 3

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

GEE PARTNERSHIP HOLDINGS, LLC,
a Delaware limited liability company, f/k/a
Gee Holdings, LLC,

              Plaintiff,

                                   Case No._____-CK

v.

GLOBAL FINANCIAL ENTERPRISES, LLC,
a Florida limited liability company,

      and

TANBAR LTD. d/b/a SEKO WORLDWIDE.
a Michigan corporation,

              Defendants.

_____/

**HOWARD & HOWARD ATTORNEYS PLLC**
By:    Patrick M. McCarthy (P49100)
        Miles T. Macik (P63262)
Attorneys for Plaintiff
101 N. Main Street, Ste. 610
Ann Arbor, MI 48104-1475
Telephone: (734) 222-1483
Fax: (734) 761-5957

_____/

**AFFIDAVIT OF CHARLES FAVRET**

    I, Charles Favret, swear and affirm that I have personal knowledge of the facts set forth

1

herein, except where the matters are not within my personal knowledge, where they are true to the best of my knowledge, information, and belief.

1.  I am over the age of eighteen years old, and make this Affidavit as my own free will.  If called as a witness, I can competently testify as to the fact stated in this Affidavit.

2.  I am Director of Operations for Plaintiff, Gee Partnership Holdings, LLC, f/k/a Gee Holdings, LLC ("Gee").  Gee is a Delaware limited liability company with its principal place of business in Texas.  Gee conducts business in Wayne and Oakland Counties, Michigan.

3.  I am also a consultant to GFE and its business relationship with Yalçinlar Ltd.

4.  I am authorized to speak on Gee's behalf in the above captioned matter.  As the Director of Operations of Gee and a consultant to GFE, I am familiar with Gee's business and specifically its contract with Defendant Global Financial Enterprises ("GFE").

5.  I have reviewed the complaint filed by Gee in the above captioned case (the "Complaint") and can testify to the accuracy and truthfulness of the facts stated therein.

6.  Gee delivers innovative services and solutions into the technology, consumer electronics, and mobility industries.  As a significant component of its business, Gee provides consulting services to, and acquires and manages emerging technology companies.

7.  One of Gee's current projects involves the development and modification of mobile devices for blind users in developing countries.  Gee has determined that this segment of the marketplace is underserved and represents a unique opportunity for growth and expansion.

8.  In or about July 2011, Gee and non-party Vertex Wireless, LLC ("Vertex") began a business relationship whereby Vertex would modify mobile devices for Gee.

9.  On or about June 9, 2011, GFE entered into an agreement with Yalçinlar Ltd., a non-party Turkish corporation, by which GFE initially agreed to provide Yalçinlar sixty-six thousand

2

cellular telephones. Subsequently, on or about November 17, 2011, Yalçinlar requested an additional twenty thousand cellular telephones, bringing the total to eight-six thousand.

10. GFE required the assistance of Gee to meet its contractual commitment to Yalçinlar.

11. To this end, on July 28, 2011, Gee entered into a Letter Agreement with GFE (the "Agreement"). The Agreement is attached as **Exhibit 1** to the Complaint.

12. As part of the Agreement, GFE assumed the performance and obligations of Gee under a separate Purchase Agreement between Gee and non-party Vertex (the "Vertex Purchase Agreement").

13. As part of the Agreement, Gee agreed to make payment on behalf of GFE under the Vertex Purchase Agreement in exchange for a payment by GFE to Gee of $312.56 per cellular phone shipped by Vertex. *Id.*

14. As part of the Agreement, GFE agreed to make payment to Gee within 30 days of shipment of the cellular phones by Vertex to GFE. *Id.*

15. Gee and Vertex entered into several agreements regarding the provision of the cellular telephones that GFE required for its contract with Yalçinlar. As part of these agreements between Gee and Vertex, Vertex modified the cellular telephones by flashing them with custom software, screen printing the exterior of the cellular telephones, bringing together a specific set of accessories, and packaging the cellular telephones in a custom box. The Cellular telephones modified by Vertex in this manner are only usable in Turkey and are worthless if they cannot be sold there.

16. As such, the Vertex modifications are custom, making the cellular telephones unique and extremely difficult and costly to reproduce.

3

17. Pursuant to the agreements between Vertex and Gee, Vertex provided approximately 21,051 cellular telephones modified according to the Vertex Agreement under the lifetime of the Agreement.

18. Vertex shipped to GFE 16,051 cellular telephones between November 18, 2011 and March 30, 2012.

19. Under the Agreement, GFE is required to pay Gee $312.56 per cellular telephone shipped by Vertex.

20. In reliance upon the Agreement, and consistent with the agreements between Vertex and Gee, Gee paid Vertex for 14,851 of the 16,051 cellular telephones shipped by Vertex between November 18, 2011 and March 30, 2012.

21. GFE only paid Gee for 8,300 of the 16,051 cellular telephones shipped and has refused to pay Gee for the remaining 7,751 cellular telephones.

22. Under the Agreement, the balance due and owing to Gee from GFE is $2,416,263.40, not including interest and late fees, for the cellular telephones that were shipped by Vertex to GFE.

23. To the best of Gee's knowledge, Defendant SEKO is currently holding the cellular telephones shipped by Vertex in storage in its Romulus, Michigan storage facility pursuant to a contractual arrangement between SEKO and GFE.

24. GFE ceased all communications with Gee once a demand was made for payment.

25. It is my understanding that GFE is experiencing solvency difficulties and is in danger of collapsing. In addition, GFE presently has a contract, which does not involve Gee, requiring it to deliver approximately 80,000 of the same type cellular phones at issue in this lawsuit to Yalçinlar Ltd, i.e., telephones modified for use in the same manner as the phones presently being held by SEKO.

4

26. Gee has also recently become aware that GFE is experiencing financial difficulties that not only impact GFE's solvency, but also impact GFE's ability to perform its contractual obligations to provide the balance of the 80,000 cellular telephones required by its contract with Yalçinlar Ltd.

_____

CHARLES FAVRET

Subscribed and sworn to before
me this 8ᵗʰ day of Oct , 2012

_____
Notary Public, Williamson County, Texas
My Commission Expires: 07·09· 2016

BREANNA LYNN RIGGINS
Notary Public, State of Texas
My Commission Expires
July 09, 2016

5

# EXHIBIT 4

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

GEE PARTNERSHIP HOLDINGS, LLC,
a Delaware limited liability company, f/k/a
Gee Holdings, LLC,

        Plaintiff,

v.

GLOBAL FINANCIAL ENTERPRISES, LLC,
a Florida limited liability company, and
TANBAR LTD. d/b/a SEKO WORLDWIDE.
a Michigan corporation,

        Defendants.

_____/

Case No.  12-013366-CK
Hon. Jeanne Stempien

**HOWARD & HOWARD ATTORNEYS PLLC**
By:   Patrick M. McCarthy (P49100)
       Mark W. Peyser (P35473)
       Miles T. Macik (P63262)
Attorneys for Plaintiff
101 N. Main Street, Ste. 610
Ann Arbor, MI  48104-1475
Telephone:  (734) 222-1483
Fax:  (734) 761-5957

_____/

## <u>ORDER FOR TEMPORARY RESTRAINING ORDER</u>

At a session of the Court held in the City of Detroit,
County of Wayne, State of Michigan
on:  October _____, 2012

PRESENT:  THE HONORABLE
Circuit Court Judge

This matter having come before the Court on Plaintiffs *Ex Parte* Motion for Temporary

Restraining Order and Order to Show Cause why a Preliminary Injunction should not be issued,

the Court having reviewed Plaintiffs *Ex Parte* Motion (the "Motion") and the Affidavit

submitted in support of the relief requested in the Motion, and the Court being otherwise fully advised in the premises:

IT IS HEREBY ORDERED that Plaintiff's Motion is granted;

IT IS FURTHER ORDERED that the Court finds that based on the facts set forth in the Complaint, Motion and Affidavit submitted in support of the Motion, irreparable harm will result to Plaintiff either from the delay to effect notice on Defendants or from the risk that the notice will itself precipitate adverse action before an order can be issued;

IT IS FURTHER ORDERED that the Court finds that based on the facts set forth in the Complaint, Motion and Affidavit submitted in support of the Motion, Plaintiff Gee will suffer irreparable harm in the event the cellular phones subject to the Agreement between Plaintiff Gee and Defendant GFE are shipped, transferred, or otherwise disposed of by Defendant GFE or Defendant Tanbar prior to a preliminary injunction hearing on the issues of fact and law set forth in Plaintiff's Motion;

IT IS FURTHER ORDERED that in order preserve the status quo, Defendant GFE, Defendant Tanbar and their owners, shareholders, members, officers, directors, employees agents and assigns are herby enjoined from taking any action to ship, transfer or otherwise dispose of any cellular telephone shipped by non-party Vertex in connection with the Agreement between Plaintiff Gee and Defendant, attached to the Motion as **Exhibit 1,** until further order of the Court;

IT IS FURTHER ORDERED that Defendants are ordered to appear on _____, 2012 at _____ and show cause why a preliminary injunction should not be issued extending the relief granted in this Order until further order of the Court;

**IT IS FURTHER ORDERED** that in accordance with MCR 3.310, the terms of this Order shall expire 14 days after the entry of this Order, unless with such time, good cause is shown or unless the Defendants consent to extend the terms of this order for a longer period.

**IT IS SO ORDERED.**


THE HONORABLE JEANNE STEMPIEN
Circuit Court Judge

#2081829-v2

3